UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBERT TACY,

                Plaintiff,

v.                                                         Case No.  5:05-cv-334-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.
_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") that redetermined Plaintiff's disability status and found that Plaintiff was not entitled to Supplemental Security Income benefits under the rules for determining disability for adults.  (Doc. 1.) The Commissioner has answered (Doc. 17) and both parties have filed briefs outlining their respective positions.  (Docs. 29 & 30.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On May 23, 1986, an Administrative Law Judge found Plaintiff, a minor at the time, to be disabled due to hemophilia A, and arthritis of the right ankle and knee. (R. 24-29.) A continuing disability review was conducted on February of 2000, finding that Plaintiff was disabled. (R. 16.) Plaintiff's eligibility was "redetermined" and after reconsideration, Plaintiff was found not disabled as of October 1, 2003 (R. 16.)

Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge (the "ALJ"). (R. 66.) The ALJ conducted an administrative hearing on November 10, 2004, and issued a decision unfavorable to Plaintiff on March 21, 2005. (R.13-23.)

On September 26, 2005, this Court remanded the case for further consideration pursuant to sentence six of 42 U.S.C. 405(g) because the tape of the hearing was blank so that the transcript of the hearing could not be prepared. (Doc. 8.) A supplemental hearing was held on April 11, 2006, and on May 10, 2006 Plaintiff's claim was again denied by the ALJ. (R. 322-334.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11]  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Grids for a conclusive determination that a claimant is disabled or not disabled.[16]

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.  In Doughty the court explained this burden shifting as follows:
   In practice, the burden temporarily shifts at step five to the Commissioner. The
   Commissioner must produce evidence that there is other work available in
   significant numbers in the national economy that the claimant has the capacity to
perform.  In order to be considered disabled, the claimant must then prove that he is
unable to perform the jobs that the Commissioner lists. The temporary shifting of the
burden to the Commissioner was initiated by the courts, and is not specifically provided
for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on October 19, 1984 and was twenty-one years old on the date of the most recent decision of the ALJ. (R. 297.) He completed schooling through the eleventh grade. (R. 298.) Plaintiff's past relevant work includes working as a cashier at

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] Id.

Wendy's and at McDonald's, and as an asphalt roller. (R. 300-302.) Plaintiff alleges that he is disabled due to back pain, osteoarthritis, hemophilia, Hepatitis C, and Attention Deficit Hyperactivity Disorder (ADHD). (R. 46, 303-04, 307.)

The relevant medical evidence is from the time period during the reconsideration of Plaintiff's disability in October of 2003. Therefore, the court will focus on the records from Plaintiff's pediatrician Dr. David Powers, consultative examinations performed by Drs. Thomas Hibberd and Anil Bhatia, state agency review forms authored by Drs. James Green and Nicholas H. Bancks, and records from Plaintiff's treating physicians at Shands Hospital.

In an August 4, 2003 letter from Dr. Powers to the Office of Disability Determinations, Dr. Powers stated that Plaintiff has hemophilia,[21] major joint bleeds, chronic right knee arthritis, gastroesophagael reflux and ADD. (R. 159.) Although Dr. Powers noted on April 9, 2003 that Plaintiff experienced chronic coughing, vomiting, diarrhea and abdominal pain, by June 9, 2003, Dr. Powers only noted that Plaintiff had slight coughing. (R. 161-62.)

On August 27, 2003, Dr. Hibberd performed a consultative psychological examination on Plaintiff. (R. 181-82.) Dr. Hibberd conducted an adult intelligence test on Plaintiff whose scores placed his intellectual ability in the low average range. (R. 182.) However, Dr. Hibberd noted that Plaintiff denied having any current mental problems,

---

[21] An inherited disorder of blood coagulation characterized by a permanent tendency to hemorrhages, spontaneous or traumatic, because of a defect in the blood coagulating mechanism. Lippincott, Williams & Wilkins, Stedman's Medical Dictionary (27th ed. 2000).

emotional problems, mood problems, anxiety or impulsive behavior. (R. 181.) Plaintiff reported sleeping well and having a normal energy level. Id.

Plaintiff reported that he plans to attend college and currently takes care of his dying grandfather while attending night school. (R. 181.) Plaintiff also informed Dr. Hibberd that he has difficulty walking which requires him to stop and rest, and that he has back problems which prevent him from performing yard work. (R. 182.) However, Plaintiff also stated that he performs all of the house cleaning and drives long distances. Id.

An Internal Medicine Disability Evaluation performed by Dr. Bhatia, dated September 10, 2003, diagnosed Plaintiff with osteoarthritis, hemophilia, recurrent bleeding of the joints and hepatitis C. (R. 184-86.) Dr. Bhatia noted that Plaintiff's right knee was swollen but had a normal range of motion. (R. 185.) Dr. Bhatia reported that Plaintiff's walking was limited to 1/4 a mile, his standing was limited to 10 minutes and he could lift up to 20 pounds. (R. 184.) The exam also revealed that Plaintiff had normal grip strength, a normal spine, normal motor and sensory activity, and that his extremities had no pedal edema, good pedal pulses and no cyanosis or clubbing . (R. 185-86.)

Dr. Green's Residual Functional Capacity Assessment - Physical Form dated September 25, 2003 found that Plaintiff had occasional postural limitations. Dr. Green concluded that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift less than ten pounds, stand or walk for two hours in an eight hour day, sit about six hours in an eight hour workday and has an unlimited ability to push and pull. (R. 188-89.) Another RFC Assessment form dated November 15, 2003 authored by Dr. Bancks

found that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, sit or stand two to four hours in an eight hour workday, sit about six hours in an eight hour workday, and was limited in his ability to push or pull using his lower extremities. (R. 233.)

Medical records from Shands Hospital from September 23, 2003 through November 4, 2003 reveal that Plaintiff had a history of Hepatitis C and back pain, and right ankle and right knee pain due to hemophilia. (R. 209-221.) On November 4, 2003, Plaintiff sought treatment for his right ankle and right knee pain, as well as lower back pain. (R. 211.) The exams showed mild abnormalities in Plaintiff's lower back (R. 217), a small effusion on the right ankle (R. 215) and hemophilic arthropathy on the right knee (R. 214).

Shands doctor Raymund Woo prescribed a "rigid AFO" for his right ankle pain and physical therapy for his right ankle. (R. 212.) On November 12, 2003, another Shands doctor, Donald Novak examined Plaintiff's hepatitis C and concluded that the condition was normal, particularly in his liver. (R. 209.) Compared to his last visit to Shands, Dr. Novak noted that Plaintiff's pain had disappeared and directed that Plaintiff call the doctor if the pain recurs. Dr. Novak also noted that Plaintiff did not have any jaundice, bruising, or difficulty concentrating. Id.

Dr. Powers treated Plaintiff for vomiting and abdominal pain episodes on January 22, 2004[22] and on May 3, 2004. (R. 240-41.) Shands Medical records from January 27, 2004 through August 10, 2004, reveal that Plaintiff was diagnosed with hemophilia with

---

[22] Plaintiff cites one of the medical records from Dr. Powers as from January 22, 2003. Plaintiff's Brief at P. 6. However, on closer examination the record is from January 22, 2004. R. 40.

recurrent right ankle and right knee bleeds, as well as progressive arthritis. (R. 245-249.)

On August 10, 2004, Plaintiff reported to the Shands doctors that he "has not had any issue except occasional right knee pain and chronic swelling of the right knee." (R. 246.) Plaintiff also told the doctors that his lower back pain did not limit him from activity. Id. Furthermore, the doctor noted that Tylenol and ibuprofen helped reduce the pain. Id.

During the hearing, Plaintiff testified that he stopped working as a heavy equipment operator in February of 2006 due to the pain in his lower back. (R. 303.) Plaintiff stated that he can sit for 25 minutes to a half-hour before his back bothers him. (R. 305.) He also stated that he can stand for 25 minutes to a half-hour and he can walk under a half-mile before swelling. (R. 305-6.) In fact, Plaintiff testified that he could probably perform a job where he could sit most of the day or that did not involve heavy work. (R. 306.)

At the close of the hearing, the ALJ inquired into the completeness of Plaintiff's records. (R. 308-09.) The ALJ told Plaintiff that "the second thing we're going to do is make sure that we have an authorization signed by you so we can update your medical records...and request them. Okay? And then the final thing I'm going to do is I'm going to ask you to go to an examination with Social Security." Id. The ALJ never obtained updated medical records nor did he send the Plaintiff for a further consultative examination.

## IV. **DISCUSSION**

Plaintiff's sole challenge is directed to the fact that the ALJ did not update Plaintiff's medical records or send Plaintiff for an additional consultative examination, as the ALJ mentioned at the conclusion of the hearing. According to Plaintiff, because the ALJ did not do what he said he would do, the ALJ violated his duty to fully and fairly develop the

record. While the ALJ did not obtain updated medical records or send the Plaintiff for a further consultative examination, such failure did not violate the duty to develop the record because neither updated medical records nor a consultative examination were necessary in view of the fact that there was no suggestion that the Plaintiff's medical condition had deteriorated.

The ALJ has a duty to fully and fairly develop the record.[23] The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, or even if the claimant is represented by counsel.[24] In fulfilling his basic duty to develop the record, an ALJ may order a consultative examination when the evidence is insufficient to support a decision in a claimant's case.[25] As a corollary, if the record is sufficient to make an informed decision, an ALJ is not required to order a consultative examination.[26]

Moreover, the regulations outline the following limited circumstances where an ALJ must order a consultative examination: (1) the additional evidence needed is not contained in the records of claimant's medical source; (2) a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved and an ALJ is unable to do so by recontacting claimant's treating physician; or (3) there is an indication of a change in the claimant's condition that is likely to affect his ability to work.[27]

---

[23] Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988).

[24] Cowart v. Schweiker, 662 F.2d 731, 735-36 (11th Cir. 1981).

[25] 20 C.F.R. § 416.919a(a)(1)-(b).

[26] 20 C.F.R. § 416.919a(a)-(b)(1)-(5); Holladay v. Bowen, 848 F.2d 1206, 1209-10 (11th Cir. 1988).

[27] 20 C.F.R. § 416.919a(b)(1)-(5).

Without any facts to support the need to obtain updated medical records or the need to obtain a further consultative examination, the Plaintiff argues that Plaintiff's medical records relating to several visits to Shands Hospital in 2005 and 2006 should have been obtained by the ALJ before the ALJ rendered a decision. Plaintiff does not suggest, however, that there was any conflict, inconsistency, ambiguity or insufficiency in the evidence that needed to be resolved or that the medical records reviewed by the ALJ did not contain the necessary information to determine whether the Defendant continued to be disabled.[28]

Moreover, Plaintiff does not suggest that there was any change in the Plaintiff's condition, which might create the need to obtain the 2005 and 2006 records from Shands. Indeed, the opposite is true - Plaintiff's condition actually improved. As discussed below, the substantial medical evidence of record and Plaintiff's own testimony support the conclusion that Plaintiff's condition readily improved by August of 2004. As such, the ALJ had more than sufficient medical information to find that Plaintiff had the RFC for sedentary work without having to order an additional consultative examination.

There is ample support in the record that Plaintiff's condition had not negatively changed. For example, as far back as September 25, 2003, state agency physician Green, concluded that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift less than ten pounds, stand or walk for two hours in an eight hour day, sit about six hours in an

---

[28] Conspicuously absent from Plaintiff's argument is any specific mention of the crucial medical information that would be revealed in the Shands records. In addition to the fact that it was the Plaintiff's burden to obtain evidence to establish his disability, even assuming the records did contain crucial medical information, Plaintiff could have attached them to his memorandum and requested a sentence six remand so that the ALJ could consider this information. Plaintiff has failed to do so.

eight hours day and had an unlimited ability to push and pull. (R. 188-89.) On a later date, Dr. Bancks found even fewer restrictions. (R. 233.)

As evidenced by the August 2004 records from Plaintiff's treating physician at Shands, Plaintiff was doing fine, was no longer taking prescription pain medications and was, instead, controlling his pain with over-the-counter Tylenol or ibuprofen. Furthermore, Plaintiff reported that his pain was not limiting him from activity, that he had not experienced any significant bleeding and that he did not have any other medical issues except occasional right knee pain and chronic swelling of the right knee. (R. 246.)

Furthermore, earlier medical records contrasted with Plaintiff's recent testimony also illustrate that his condition improved. During Plaintiff's consultative exam with Dr. Bhatia on September 24, 2003, Plaintiff stated that he could only walk a quarter of a mile or less. (R. 184.) However, during the April 11, 2006 hearing, Plaintiff testified that he could now walk up to a half-mile. (R. 305.) Moreover, on November 11, 2003 Dr. Bancks opined that Plaintiff was limited to lifting twenty pounds occasionally and lifting ten pounds frequently (R. 233), whereas Plaintiff testified that he could now lift seventy pounds. (R. 305.)

As for activities of daily life, Plaintiff testified that he currently does housework, including dusting, cleaning dishes, mopping, vacuuming, laundry, some cooking and some yard work. (R. 311.) Plaintiff also testified that he goes grocery shopping once a week, writes sheet music and attends church twice a week. (R. 311-12.) While these activities are not dispositive, the fact that Plaintiff was able to engage in these activities is evidence that his condition had not gotten worse from the date of the last medical information of record.

Lastly, the record illustrates that Plaintiff worked full time as an asphalt roller operating heavy equipment from July 2005 until a month before his most recent disability hearing. (R. 302-03.) At the hearing, Plaintiff admitted that he could perform a job where he could sit most of the day that did not involve heavy work, which is consistent with the RFC for sedentary work as found by the ALJ. (R. 306.)

Accordingly, because the substantial medical evidence and Plaintiff's testimony support the ALJ's finding that Plaintiff's condition improved since the date of the last medical report on record, the ALJ was not required to request additional medical records or to order an additional consultative exam even though he mentioned at the hearing that he might do so. For these reasons, the Court concludes that the ALJ did not fail to fulfill his duty to fully develop the record.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 19, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

13